UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20523-CIV-SEITZ/DUBÉ

ABEL RODRIGUEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #21) and the Motion for Summary Judgment filed by the Defendant (D.E. #22) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Abel Rodriguez (hereinafter "Rodriguez" or "Plaintiff").

## I. FACTS

Rodriguez filed an application for supplemental security income on March 16, 2004, which asserted disability as of September 1, 2001. (R. 55-57).[1] The application was denied initially and on reconsideration. (R. 33-44). An initial hearing was held on November 28, 2006. (R. 360-373)[2].

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

2. After the initial hearing on January 26, 2007, the ALJ issued a decision finding the Plaintiff not disabled. Thereafter, the Plaintiff filed a subsequent application for benefits and it was determined that the Plaintiff was disabled as of March 1, 2007. The Appeals Council vacated the ALJ's prior hearing decision and remanded the case for a new hearing. (R. 24).

Following a second hearing on September 9, 2008 (R. 374-401), the ALJ issued a decision denying the request for benefits. (R. 21-32). A request for review filed with the Appeals Council was denied. (R. 7-9).

The Plaintiff, age 22 at the time of the November 28, 2006 hearing, testified he completed the 8th grade in the United States. The Plaintiff stated he was born in Cuba and moved to the United States in 1993. Rodriguez testified he does not work because of a dilated aorta, aortic route, club feet, scoliosis and blindness in the left eye. (R. 364). The Plaintiff said he sees his heart doctor every 6 months. Rodriguez further stated that his doctor restricted him from sports and told him not to lift more than 10 pounds. The Plaintiff testified he cannot walk too much, or stand/ sit too long because he gets shortness of breath. The Plaintiff stated he only takes one medication for his blood pressure which is under control. (R. 365).

Rodriguez said he has a driver's license, but does not drive because of the issues with his vision. Rodriguez testified he can walk half a block; stand for 10 minutes before having to sit; sit for 10 minutes before having to move around; and can lift a maximum of 10 pounds. (R. 366). The Plaintiff said he goes to sleep at 10:00 p.m. and wakes up around noon. (R. 366-367). The Plaintiff spends his day sitting and laying down; walking around the house; and sometimes watching television. Rodriguez said his mother does the dishes, laundry and housework. (R. 367). The Plaintiff explained that as a result of his heart problems, he experiences shortness of breath about 5 times a day. (R. 367-368).

According to the Plaintiff, he is restricted to lifting a maximum of 10 pounds because of his pressure. He explained that his heart could accelerate resulting in his aortic route exploding. Rodriguez asserted he could not lift 10 pounds consistently throughout the day. The Plaintiff also said he was told not to get aggravated and to avoid arguments. (R. 368). The Plaintiff testified he

cannot see out of his left eye because of scar tissue on his pupil. He also testified he has myopia in his right eye. (R. 369). The Plaintiff explained if he watches television for 20 minutes or reads for 10 minutes he gets headaches and redness in his eyes. (R. 369-370). The Plaintiff also stated his vision problems cause issues with his depth perceptions and he cannot distinguish between street signs or names. Rodriguez said he does not leave his house alone. (R. 370). The Plaintiff stated that in addition to his other issues, he has club feet which affects his walking and causes him to wear out shoes more quickly. (R. 370-371).

The Plaintiff did not testify at the hearing on September 9, 2008. The Plaintiff's attorney presented Allan M. Selbst (hereinafter "Dr. Selbst" or "the Doctor"),[3] a medical expert in internal medicine. (R. 378). Dr. Selbst testified he was familiar with the listing impairments set for in the Social Security Regulations and it was his opinion that between March 11, 2004 through February 28, 2007, the Plaintiff equaled listing 4.10. (R. 379-380). The Doctor testified the Plaintiff had a rare disease known as Marfan syndrome. (R. 380). The Doctor explained that the disease affects multiple organs, the lungs, eyes, spine, ligaments and tendons. He further stated the Plaintiff has valvular heart disease which makes his valves weak and dilated. According to Dr. Selbst, the problems with the Plaintiff's heart are documented by a June 2004 echocardiogram which showed an enlarged aorta. (R. 381).

Dr. Selbst explained that because of the dilated aorta and leaking valve, the Plaintiff suffers from chest pain, shortness of breath and decreased energy levels. The Doctor testified the Plaintiff also has congenital clubfeet and severe scoliosis in his spine. (R. 382). The Doctor further testified that an x-ray taken in March 2004 confirmed the severity of the Plaintiff's scoliosis. Dr. Selbst stated the Plaintiff suffers from dextroscoliosis which is curvature of the spine to the right and causes

---

3. Incorrectly spelled as Allen Selps throughout the transcript.

weakness and back pain. In addition to the problems mentioned, the Doctor stated the Plaintiff also suffers from visual problems for which he underwent a blepharoplasty procedure. (R. 383). The Doctor more specifically said the visual problem is in the left eye where there is blindness and irritation. He also said there is no abnormal vision in the right eye, although the Plaintiff does have irritation and redness. (R. 384).

Dr. Selbst stated the Plaintiff had pulmonary function testing done in October 2003, which showed fixed obstruction. Dr. Selbst also explained the clubfeet as follows:

> ... a congenital malformation of the, of the feet where on some of the bones are fused, the ligaments, you know are weak. And he's has surgical procedures to those although it wasn't totally corrected. And he actually has to stand on his heels. You know that's the essence of clubbed feet where the support of the body is on the heels.

(R. 385). He added that it also causes problems in walking, standing and balancing. (R. 385). The Doctor noted the Plaintiff would be limited physically to prevent worsening of his heart. (R. 386). He explained that significant activity could rupture the artery which is extremely dangerous. Dr. Selbst stated the Plaintiff should not climb steps; walk more than a block or lift more than 10 pounds. He added the Plaintiff could not lift less than 10 pounds consistently throughout the day. (R. 387).

According to the Doctor, the Plaintiff would be precluded from severe heat or cold; would not be able to stand for more than 15-20 minutes at a time because of back pain, clubfeet and scoliosis; and could not sit for more than an hour at a time. (R. 388). The Doctor stated the Plaintiff would also need to lay down every 2-3 hours for 15-20 minutes at a time throughout the day. (R. 389). Dr. Selbst indicated that during the time period in question, the Plaintiff would have missed about a week of work a month because of back pain, shortness of breath and chest pain. (R. 390).

Dr. Selbst was shown a RFC evaluation from August 26, 2004, which he said did not encompass all the Plaintiff's problems because it did not include his pulmonary, lung or vision problems. (R. 391). He also said he did not agree that the Plaintiff could lift 10 pounds frequently or 20 pounds occasionally. (R. 391-391).

Dr. Selbst stated the Plaintiff's severe scoliosis would cause postural limitations in balancing, stooping, kneeling, crouching and crawling. (R. 392). Dr. Selbst then reviewed a RFC assessment completed in May 2004, which indicated a primary diagnosis of aortic regurgitation. (R. 392-393). Dr. Selbst testified that the RFC was also incomplete because it did not include the Plaintiff's aortic dilation, dextroscoliosis, vision problems or clubfeet. (R. 393). Dr. Selbst explained that the problems were probably not all documented because the RFC was completed before all the Plaintiff's testing was performed. The Doctor testified that if the Plaintiff's right eye were covered, he would not be able to read a newspaper or computer screen and a television would be blurry. (R. 394). In addition to the Plaintiff's testimony, Pedro Roman, a vocational expert, testified at the hearing. When asked what unskilled jobs could be performed at the light and sedentary levels, the VE stated: assembler, electronical accessories, DOT #729.687-010, light, with an SVP of 2; car wash attendant, DOT #915.667-010, light, with an SVP of 2; cashier II, DOT #211.462-010, light, with an SVP of 2; final assembler, DOT #713.687-018, sedentary, with an SVP of 2; finisher, DOT #731.687-014, sedentary, with an SVP of 2; and assembler button, DOT #734.687-018, sedentary, with an SVP of 2. (R. 398).

The VE was asked whether an individual missing work 4-6 times a month would be able to work; and the VE stated under said circumstances all jobs would be eliminated. The VE was asked whether an individual needing to lie down every 2 or 3 hours for 15 to 20 minutes would be able to

work and he responded as follows:

> ... if it goes beyond the allowed rest periods of, [ ]15 minutes in the morning, 30 minute lunch break in the afternoon and, [ ] 15 minute break in, [ ] after lunch, I would say that it would have a serious reduction in the occupation base. Jobs have to be performed uninterruptedly for at least, in accordance with the regulations, at least for two hours without interruptions, and therefore that would violate that, [ ] regulation.

(R. 399). The VE further testified that an individual who could not be around odors, fumes, hot or cold, and had monocular problems would have all jobs eliminated. (R. 400).

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: chest pain with a history of Endocarditis, Scoliosis and Marfan's Syndrome. The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. The ALJ determined that the Plaintiff has the RFC to perform a full range of light work. (R. 27). The ALJ found the Plaintiff did not have past relevant work but based on the Plaintiff's age, education, work experience and RFC there were jobs that exist in significant numbers in the national economy which the Plaintiff could perform, and thus, was not disabled within the meaning of the Social Security Act. (R. 31-32).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to

support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step,

the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in discounting the opinion of the medical expert who testified at the hearing. The Plaintiff more specifically contends the ALJ erred in not finding the Plaintiff equaled Listing 4.10 as was the opinion of Dr. Selbst. With regard to the

opinion of Dr. Selbst, the ALJ stated as follows:

> Dr. Selbst did not agree with the assessments and residual functional capacities by various doctors in the file. He explained that the doctors did not take into consideration the claimant's different conditions. However, the record as a whole is void of any finding consistent with Listing 4.10, as indicated by Dr. Selbst, as will be discussed below.

(R. 28).

The Eleventh Circuit reviewed listing impairments and stated as follows:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Id.* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.' *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

Wilson v. Barnhart, 284 F. 3d 1219 (11th Cir. 2002). Additionally, while the ALJ must consider whether a claimant meets a listing, the ALJ need not mechanically recite that a claimant does not meet a listing in his decision, as this fact may be implied from the record. Hutchinson v. Bowen, 787 F. 2d 1461, 1463 (11th Cir. 1986). Listing 4.10 requires:

> ***4.10 Aneurysm of aorta or major branches,*** due to any cause (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment (see 4.00H6).

9

20 C.F.R. pt 404, subpt. P, app. 1 § 4.10 (2008). In the instant matter, Dr. Selbst testified that he believed the Plaintiff equaled Listing 4.10 as a result of having Marfan syndrome. The ALJ reviewed the diagnostic testing as follows:

> As noted above, prior to March 1, 2007, extensive diagnostic testing has failed to reveal any significant cardiac, pulmonary, or brain abnormality. The claimant has been provided with medication to treat his symptoms. He is able to take care of his own personal needs and attend scheduled doctor's appointments. During the day he watches television. There are no records supporting lumbar or foot pain that would prohibit the claimant from lifting, carrying, sitting, standing and/or walking or from engaging in basic work-related activities. He did not require the use of a TEN's unit, nor has he required high dosages of mind altering pain medications that would render him bedridden. Further, the medical evidence failed to document any significant adverse side effects from any medications. The Pulmonary Function test performed in October 2006 was within normal limits. No treating physician restricted the claimant from all work activity. A review of the claimant's systems prior to March 1, 2007 revealed negative cardiovascular, orthostatic, genitourinary, musculoskeletal, neurologic and lymphatic systems. There were no MRI's MRA/MVA or CT scan findings showing severe and frequent exacerbations indicative of debilitating symptoms that would prohibit him from functioning normally. Consequently, the claimant's impairments fail to show that he meets or equals Listing 4.10 as stated by Dr. Selbst.

(R. 30).

As the Defendant correctly points out, Dr. Selbst did not apply any of the relevant listing criteria because the doctor failed to address evidence of dissection. As noted above, the burden to demonstrate that the listing criteria is met rests with the Plaintiff. Additionally, a review of the diagnostic testing reveals no evidence of dissection. An echocardiogram taken July 11, 2003, ruled out an aneurysm of the aorta. (R. 100). An echocardiogram taken on October 14, 2006 showed left ventricular systolic function was normal; moderate aortic insufficiency; borderline mitral valve

prolapse; and borderline aortic root dilatation. Again, there was no evidence of dissection. (R. 337). Additionally, a CT taken on January 4, 2007, revealed no evidence of significant aneurysm or dissection. (R. 329). Accordingly, the Plaintiff has not met his burden of demonstrating he met or equaled Listing 4.10.

The Plaintiff's next point of contention is that substantial evidence does not support the ALJ's RFC assessment. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

The Plaintiff contends that the ALJ failed to explain or properly evaluate the effect the Plaintiff's multiple impairments would have on his ability to work.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4). More specifically, the Plaintiff contends the ALJ improperly rejected the opinion of Dr. Heager.

The opinion of a treating physician is entitled to substantial weight unless good cause exists

11

for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

On July 27, 2005, Dr. Heager completed a Residual Functional Capacity Questionnaire. (R. 245-247). Dr. Heager stated the Plaintiff's prognosis was guarded and his impairments would be expected to last 12 months. The doctor opined Rodriguez could walk one block, and sit and stand for 10 minutes at one time. Dr. Heager also opined the Plaintiff could sit and stand for less than 2 hours in an 8-hour day and lie/recline for 6 hours in an 8-hour day. (R. 245). The doctor stated Rodriguez could frequently lift less than 10 pounds; grasp, turn and twist objects 20% of the day with the right hand and 10% of an 8-hour workday with the left hand; perform fine manipulation with his right fingers 55% of an 8-hour workday and 50% of an 8-hour workday with his left fingers; and could reach with his right arm for 20% of an 8-hour workday and 10% of an 8-hour workday with the left arm. Dr. Heager stated the Plaintiff's impairments would cause him to miss work once or twice a month and the Plaintiff was blind in the right eye and cataracts in the left eye. (R. 246).

With regard to Dr. Heager's opinion, the ALJ stated as follows:

> I have discounted the assessment of Dr. Daniela Heager dated July 2005 in which she indicated that the claimant was incapable of performing the minimal demands of less than a full range of sedentary work activity. Dr. Heager did not submit any progress notes that would support such extreme restrictions and her conclusory statement is contrary to other evidence of record (Exhibit 8F).

(R. 30). This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984). This Court does not find the ALJ's analysis to be inconsistent with the required legal standards. There are several inconsistencies with doctor's own treatment notes. Namely, in July 2005, Dr. Heager stated the Plaintiff had left eye cataracts and right eye blindness; in December 2005, Dr. Heager noted the Plaintiff had left eye blindness; in May 2006, she reported the Plaintiff had some blurry vision in the left eye. (R. 246, 255, 259).

Additionally, the Plaintiff did not list blindness on his original supplemental security income application (R. 55), and stated he was in trade school and had no difficulties with average activities (R. 97). The Plaintiff also testified he watched some television throughout the day. (R. 357). Additionally, this Court notes the record further contradicts the extreme findings. For example, the 2004 echocardiogram showed that anatomically, the Plaintiff's heart was normal (R. 119). Additionally, the Plaintiff denied chest pain and palpitations in July 2003. (R. 97). Records also show that the Plaintiff stated he could run a block and walk for 30 minutes at a time which are both inconsistent with Dr. Heager's RFC assessment. (R. 334). In sum the ALJ's decision to discount Dr. Heager's opinion is supported by substantial evidence. Further, as discussed herein above, the diagnostic testing did not support the testimony of Dr. Selbst at the hearing. A review of the record shows that the ALJ took into consideration each of the Plaintiff's treating physician's testing, diagnosis and reports. The record also reveals that there was no additional evidence which was

missing from the record nor has the Plaintiff previously contended same. Accordingly, the Court finds the ALJ's RFC determination is supported by substantial evidence. The Plaintiff briefly mentions that the ALJ should have relied on the testimony of a vocational expert rather than on the medical vocational guidelines. This argument lacks merit as a vocational expert testified at the hearing and the ALJ relied on same in rendering his decision. (R. 31-32).

The Plaintiff's final point of contention is that the ALJ misstated the facts of record in finding the Plaintiff not disabled. This argument is without merit for reasons which will be discussed in more detail below. First, the Plaintiff contends the ALJ misstated evidence by stating the Plaintiff had "no evidence of dissection of the aorta" and "conclusions of the MRI and MRA...revealed no evidence of aortic dissection." (D.E. #21, pg. 20). The Plaintiff contends that a transesophageal echocardiogram showed dissection was found. A review of same states, "An MRA was then obtained. This study showed *no evidence of dissection.*" (R. 153) (emphasis added).

The Plaintiff also contends that the ALJ misstated an October 3, 2006 Pulmonary Function Report. (R. 250-253). Specifically, the Plaintiff stated that while the ALJ noted the test, "revealed the spirometry was within normal limits and lung volumes were within normal limits" the report was suggestive of fixed obstructions. (R. 30). However, the report states, "SPIROMETRY IS WITHIN NORMAL LIMITS. LUNG VOLUME WITHIN NORMAL LIMITS." (R. 252). The Court again does not find the ALJ misstated the record. Finally, the Court agrees the Plaintiff was mistaken in relying on the RFC assessment provided by Dr. Heager for the reasons set forth above. Accordingly, it is the opinion of this Court that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #21) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #22) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 19 day of November, 2010.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE